UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

MICHAEL J. SVEZZESE, JR.,
Individually And On Behalf Of All
Others Similarly Situated; LOUISIANA
SCHOOL EMPLOYEE RETIREMENT
SYSTEM,

　　　　　*Plaintiffs-Appellants,*

　　　　　v.

DURATEK, INCORPORATED, formerly
known as GTS Duratek; ROBERT E.
PRINCE; ROBERT F. SHAWVER,

　　　　　*Defendants-Appellees.*

No. 02-1587

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Marvin J. Garbis, District Judge.
(CA-01-1830-MJG)

Argued: May 6, 2003

Decided: June 12, 2003

Before LUTTIG, MOTZ, and SHEDD, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

## COUNSEL

**ARGUED:** Glen DeValerio, BERMAN, DEVALERIO, PEASE,
TABACCO, BURT & PUCILLO, Boston, Massachusetts, for Appel-

lants. Steven F. Barley, HOGAN & HARTSON, L.L.P., Baltimore, Maryland, for Appellees. **ON BRIEF:** Leslie R. Stern, Patrick T. Egan, BERMAN, DEVALERIO, PEASE, TABACCO, BURT & PUCILLO, Boston, Massachusetts; Charles J. Piven, Marshall N. Perkins, LAW OFFICES OF CHARLES J. PIVEN, P.A., Baltimore, Maryland, for Appellants. Mark D. Gately, HOGAN & HARTSON, L.L.P., Baltimore, Maryland, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Plaintiffs Michael J. Svezzese, Jr. and the Louisiana School Employee Retirement System ("Plaintiffs") filed this class action on behalf of themselves and all other persons or entities who purchased the common stock of Duratek Inc., f/n/a GTS Duratek ("Duratek") during the period March 8, 2000 through March 13, 2001 (the "class period"). Plaintiffs allege that during the class period, defendants Duratek, Robert E. Prince (Duratek director, CEO and President), and Robert F. Shawver (Duratek CFO and Executive Vice President) engaged in a scheme and course of conduct to inflate Duratek's stock price through a series of false and misleading misrepresentations and omissions in the company's public statements and financial filings in violation of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. §§ 78j(b) (West 1997 & Supp. 2003), Rule 10b-5, 17 C.F.R. § 240.10b-5 (2003), and section 20(a)of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78t(a) (West 1997). Because we agree with the district court that Plaintiffs have failed to allege facts sufficient to provide the necessary strong inference that the defendants acted with scienter, we affirm its order dismissing the complaint.

I.

Duratek provides radioactive waste management services, including waste transportation, storage, processing, and disposal for govern-

ment and commercial clients. These services are generally provided under fixed-price, long-term contracts. Such services constitute between one-third and one-half of Duratek's total revenues.

Duratek operates two major waste processing facilities, both of which are in Tennessee. After processing the waste at these facilities, Duratek then ships the waste to designated burial sites in South Carolina and Utah. The amount of waste that can be kept on site at the processing facilities is strictly regulated, requiring that Duratek maintain a timely flow of waste through the processing facilities and to the off-site disposal sites.

Duratek's profitability hinges on its ability to control burial costs per unit of waste processed. Because its waste disposal contracts typically charge clients by the pound of waste processed while burial costs are incurred on a volumetric basis, increasing the density of the waste shipped to the burial site (*i.e.*, mass per unit of volume) translates directly into increases in gross margins on the waste management contracts. Tracking the waste as it is processed and shipped to the burial sites is thus essential in order for Duratek to estimate costs and project future earnings. During 2000, Duratek apparently failed to follow procedures necessary to track its waste processing operations and thus maintain an accurate balance sheet. These accounting failures provide the basis for this litigation.

After discovering its accounting problems, Duratek issued a press release in April 2001 restating previously reported financial results for the first three quarters of 2000 and its consolidated financial results for 1999. Specifically, the restatement resulted in a sixty-one percent reduction in Duratek's reported net income for the first three quarters of 2000. The press release explained that the restatement of financial results was necessary "to reflect the reconciliation of unprocessed waste to revenues and costs for such periods and certain other adjustments." The press release also stated that "the Company's systems did not reveal the operation issues associated with the new waste processing strategies in a timely manner," and that the restatement was driven by failure to follow proper accounting practices. Duratek's stock price suffered accordingly.

The problem with Duratek's financials stemmed largely from an improper accounting of costs and revenues associated with its long-

term, fixed-price waste management contracts. Like many other firms operating under long-term contracts, Duratek utilized the so-called "percentage-of-completion" ("POC") method of revenue recognition, which allowed Duratek to record revenue as it performed the contract. The basic principles and requirements for the POC method are detailed in the Generally Accepted Accounting Principles (GAAP). SEC regulations require that companies maintain proper internal procedures that allow preparation of financial statements in accordance with GAAP. In essence, the POC method requires that the company first estimate the total costs of performing the contract and then compare or reconcile that estimate with accrued actual costs at regular intervals (*i.e.*, quarterly) over the life of the contract. The comparison yields an estimate of the portion of the contract that has been completed, providing a benchmark for the corresponding amount of revenue that would then be recorded on the company's books. Although the POC method is the preferred method of accounting for long-term contracts, its successful application depends on the ability to make reasonably dependable estimates of contract costs and progress toward the completion of the contract.

In this case, Duratek allegedly failed to track and compare the actual costs of processing radioactive waste at its facilities, which turned out to be higher than expected, with its estimates of total costs. At least part of the reason for this arose from the fact that Duratek was receiving more waste for processing than it could handle in a timely manner, forcing the company to move processed waste off-site as quickly as possible. According to the complaint, these time pressures led Duratek to package the waste for shipment inefficiently (*i.e.*, below the normal density) thus leading to cost overruns and reduced profits. Because Duratek failed to catch these problems and the related cost overruns in its accounting, the company overstated its actual revenues in press releases and SEC filings by a significant amount.

Plaintiffs allege that these failures grew out of a lack of Duratek's failure to apply internal controls necessary to form reliable estimates of the costs of processing and disposal of waste at its facilities, even though the information needed to perform this accounting was readily available in Duratek's own records. Simply put, Plaintiffs maintain that without adequate procedures in place to reconcile quarterly

inventories of unprocessed waste with deferred revenues and accrued expenses, Duratek had no way of knowing whether it was actually making any money under the contracts.

According to the complaint, these accounting failures constituted securities fraud in violation of section 10(b) of the 1934 Act, 15 U.S.C.A. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5. The complaint also alleges that defendants Prince and Shawver acted as controlling persons in violation of section 20(a) of the 1934 Act, 15 U.S.C.A. § 78t(a). The complaint does not contain any allegations of insider trading or self-dealing on the part of Duratek managers or directors.

## II.

We review *de novo* a district court's dismissal of a complaint pursuant to Fed. R. Civ. P. 12(b)(6). *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Dismissal for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support its claim and would entitle it to relief. In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in the light most favorable to the plaintiff. *Id.*

In order to prevail on a claim brought under section 10(b) and Rule 10b-5, the plaintiff carries the burden of proving that: "'(1) the defendant made a false statement or omission of material fact (2) with scienter (3) upon which the plaintiff justifiably relied (4) that proximately caused the plaintiff's damages.'" *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 613 (4th Cir. 1999) (quoting *Hillson Partners Ltd. P'ship v. Adage, Inc.*, 42 F.3d 204, 208 (4th Cir. 1994)).

This case turns on whether Plaintiffs alleged sufficient facts in their complaint to plead scienter. As defined by the Supreme Court, "scienter refers to a mental state embracing intent to deceive, manipulate or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194, n. 12 (1976). The Supreme Court has expressly reserved, on two separate occasions, the question whether recklessness suffices to meet the scienter requirement in 10b-5 actions. *Id.*; *Aaron v. SEC*, 446 U.S. 680, 686, n. 5 (1980); *see also Phillips*, 190 F.3d at 620 ("[T]o estab-

lish scienter, a plaintiff must still prove that the defendant acted intentionally, which may perhaps be shown by recklessness.").

Under the 1995 Private Securities Litigation Reform Act (PSLRA), a securities fraud complaint must also meet heightened pleading standards, particularly with respect to scienter. *See* 15 U.S.C.A. § 78u-4(b) (West 1997). Specifically, the PSLRA requires that for any federal securities fraud action that requires proof of state of mind, "the complaint, shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C.A. § 78u-4(b)(1). If the complaint does not meet these pleading requirements, the district court "shall, on the motion of any defendant, dismiss the complaint." 15 U.S.C.A. § 78u-4(b)(3)(A). Thus, Plaintiffs carry the burden in this case of alleging particularized facts "giving rise to a strong inference" of the required scienter.

We have not yet adopted a specific standard as to what precisely a plaintiff must plead in order to meet the PSLRA's scienter requirement. *See Phillips*, 190 F.3d at 621 ("We have not yet determined which pleading standard best effectuates Congress's intent."). And there are at least three different standards currently "in play" among our sister circuits. At one end of the spectrum is the relatively lenient standard espoused by the Second Circuit. Under that standard, a plaintiff may plead scienter by alleging specific facts that either (1) establish "both motive and opportunity to commit fraud" or (2) constitute "strong circumstantial evidence of conscious misbehavior or recklessness." *See Kalnit v. Eichler*, 264 F.3d 131, 138-39 (2d Cir. 2001). At the other end of the spectrum is the relatively strict "deliberate recklessness" standard espoused by the Ninth Circuit. *See In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999) (holding "that particular facts giving rise to a strong inference of deliberate recklessness, at a minimum, is required to satisfy the heightened pleading standard under the PSLRA"). In between is an intermediate standard holding that motive and opportunity, while not sufficient by themselves, can be used to demonstrate conscious or reckless misconduct. *See, e.g.*, *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 550-51 (6th Cir. 1999); *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 197 (1st Cir. 1999).

In this case, the district court followed our decision in *Phillips* and dismissed the complaint on the ground that even under the lenient Second Circuit standard, the allegations did not meet the PSLRA requirements. We agree with this disposition.

Because Plaintiffs failed to allege any facts pertaining to motive, they cannot proceed under the first "motive and opportunity" prong of the Second Circuit standard. Thus, the key issue in this appeal is whether the complaint contains allegations sufficient to proceed under the second "conscious misbehavior or recklessness" prong of the Second Circuit standard. Plaintiffs maintain that their complaint does "state with particularity facts giving rise to a strong inference that the defendant(s)" acted with recklessness. *See* 15 U.S.C.A. § 78u-4(b)(1).

In this context, however, recklessness does not equate to gross negligence. Rather, the Supreme Court has suggested that recklessness in the 10b-5 context must embrace something like an intent to deceive. *See Hochfelder*, 425 U.S. at 194 n. 12 ("In this opinion the term 'scienter' refers to a mental state embracing intent to deceive, manipulate, or defraud. In certain areas of the law, recklessness is considered to be a form of intentional conduct for purposes of imposing liability for some act. We need not address here the question whether, in some circumstances, reckless behavior is sufficient for civil liability under § 10(b) and Rule 10b-5."). In *Phillips*, we explicitly acknowledged this particular understanding of recklessness:

> The securities laws generally define recklessness as an act "so highly unreasonable and such an extreme departure from the standard of ordinary care as to present a danger of misleading the plaintiff to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it."

*Phillips*, 190 F.3d at 621 (quoting *Hoffman v. Eastabrook & Co.*, 587 F.2d 509, 517 (1st Cir. 1978)); *see also Novak v. Kasaks*, 216 F.3d 300, 312 (2d Cir. 2000) (stating that "the scienter requirement can be satisfied by pleading either 'conscious recklessness' — *i.e.*, a state of mind 'approximating actual intent, and not merely a heightened form of negligence' — or 'actual intent'". (citation omitted)).

In this case, the complaint contains six general allegations, which, Plaintiffs contend, suffice to meet the scienter requirement. These are: (1) Duratek lacked internal controls; (2) Duratek violated simple accounting rules; (3) Duratek violated its own internal revenue recognition policy; (4) Duratek's resulting earnings restatement was of great magnitude; (5) Duratek's accounting "fraud" occurred at its principal division; and (6) Duratek routinely understated expenses in a number of ways.

As should be apparent from this list, all of these allegations are, in essence, allegations of accounting irregularities and violations. None of these allegations evidence fraudulent intent or recklessness sufficient to survive a motion to dismiss under the Second Circuit standard (or either of the other two standards employed by other circuits). *See Novak*, 216 F.3d at 309 ("[A]llegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim. Only where such allegations are coupled with evidence of 'corresponding fraudulent intent,' might they be sufficient." (citations omitted)). Plaintiffs fail to point to any evidence that Duratek's management knew of or recklessly disregarded the problematic accounting practices. Without indicia of fraudulent intent, therefore, these allegations fail to support a strong inference that defendants acted with conscious or reckless disregard for proper accounting practices.

Plaintiffs argue on appeal that even if these allegations do not support a strong inference of scienter when considered individually, they do give rise to a strong inference of reckless conduct when considered collectively. This argument also fails. Despite plaintiffs' efforts to bootstrap their allegations into a strong inference of scienter through the additive effect of the individual allegations, missing from the complaint is the one essential ingredient necessary to establish the strong inference — some indication that defendants acted with fraudulent intent or recklessness. Without that, there is no inference, much less a strong inference, that defendants acted with the required scienter.

In sum, all of the allegations in the complaint, whether considered individually or collectively, fail to provide a sufficient basis to meet even the most lenient PSLRA pleading standard. Upon inspection, it

is clear that Plaintiffs allege little more than accounting failures and breakdowns in the internal procedures necessary to maintain proper accounting practices. Without specific allegations pointing to a corresponding fraudulent intent or recklessness, these allegations fail to state a claim upon which relief can be granted. Consequently, the district court correctly dismissed Plaintiffs' section 10(b) claim. Moreover, because Plaintiffs' second claim for controlling person liability under section 20(a) must be based upon a primary violation of the securities laws, that claim fails as well.

### III.

For the reasons set forth within, the judgment of the district court is

*AFFIRMED*.